STEPHEN H. GALLOWAY, OSB No. 093602
stephen.galloway@stoel.com
ELLIOTT J. WILLIAMS, OSB No. 144835
elliott.williams@stoel.com
BRIAN D. BOLLT, OSB No. 223576
brian.bollt@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MCMENAMINS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRAVELPASS GROUP, INC., <br><br> Defendant. | Case No.: <br><br> **COMPLAINT FOR TRADEMARK INFRINGEMENT (INJUNCTIVE RELIEF DEMANDED)** <br><br> DEMAND FOR JURY TRIAL |

Plaintiff McMenamins, Inc. ("McMenamins") for its complaint against Defendant

TravelPass Group ("TravelPass") states and alleges as follows:

**NATURE OF THE ACTION**

1. In this action, McMenamins seeks injunctive and monetary relief for acts of

trademark/service mark infringement, trademark/service mark dilution, and unfair competition

Page 1 - COMPLAINT FOR TRADEMARK INFRINGEMENT

117886710.6 0026687-00094

arising out of the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"), ORS 647.095, *et seq.*, ORS 646.608, *et seq.*, and the common law.

## THE PARTIES

2.     McMenamins is an Oregon corporation organized under the laws of Oregon with its principal place of business in Portland, Oregon.

3.     McMenamins is a family-owned business with 56 locations across Oregon and Washington offering various hospitality, entertainment venues, and food and beverage options. McMenamins is well-known for its breweries, pubs, and historic hotels.

4.     McMenamins is the owner of MCMENAMINS® marks for both federal and Oregon State use.

5.     Upon information and belief, TravelPass is a Delaware corporation organized under the laws of Delaware with its principal place of business in South Jordan, Utah.

6.     Upon information and belief, TravelPass is a travel-planning company whose "travel marketplace" brands gather hotel and rental car information so customers can compare rates and book reservations.

## JURISDICTION AND VENUE

7.     This action arises under the Lanham Act, 15 U.S.C. §§ 1114 and 1125.  This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  This Court has supplemental jurisdiction over state and common law claims pursuant to 28 U.S.C. § 1367(a).

8.     This Court has specific personal jurisdiction because TravelPass has engaged in commercial business in and into Oregon.  TravelPass lists many Oregon hotels on its websites, including eight McMenamins locations: (1) Crystal Hotel; (2) Edgefield; (3) Gearhart Hotel; (4)

Grand Lodge; (5) Hotel Oregon; (6) Kennedy School; (7) Old St. Francis School; and (8) White Eagle Saloon & Hotel.  TravelPass users may book a stay at those locations through multiple TravelPass websites, the result of which is TravelPass purposefully directing its infringing activities into Oregon.

9. TravelPass's wrongful conduct is causing actual harm that TravelPass knows is likely to be suffered in Oregon.  McMenamins has suffered actual harm from TravelPass's actions on at least two occasions.  On or about August 5, 2022, a customer at McMenamins' Hotel Oregon complained that they were being overcharged based on an incorrect price shown on a TravelPass website.  On or about December 26, 2022, a different customer at McMenamins' Hotel Oregon complained that he would never stay at McMenamins hotels again after receiving poor customer service from TravelPass, which he mistakenly believed to be McMenamins.

10. Even with notice of its infringement and the resulting actual confusion of affiliation injuring McMenamins in Oregon, TravelPass has refused to cease use of McMenamins' Mark.

11. Venue is also proper in this district under 28 U.S.C. § 1391(b)(1) and (c) because TravelPass is an entity that can sue and be sued in its own name and is subject to personal jurisdiction in this district as alleged above.  In the alternative, venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the asserted claims occurred in this district.

## MCMENAMINS' SERVICE MARK / TRADEMARK RIGHTS

12. McMenamins is the owner of federal and state mark registrations for MCMENAMINS® including the following (collectively the "MCMENAMINS® Marks"):

    a. Service Mark Registration 1,674,622 (the "622 Registration") issued by the U.S. Patent and Trademark Office on February 4, 1992 for the mark MCMENAMINS®, which is incontestable pursuant to 15 U.S.C. §§ 1065 and 1115; and

    b. Trademark Registration 24,249 (the "249 Registration," and collectively with the 622 Registration, the "MCMENAMINS® Registrations") issued by the State of Oregon on April 23, 1990, for the mark MCMENAMINS®.

 13. True and complete copies of the MCMENAMINS® Registrations are attached hereto as <u>Exhibits 1 and 2</u>.

 14. The MCMENAMINS® Registrations are each valid, are subsisting, and have not been cancelled.

 15. The MCMENAMINS® Registrations each constitute prima facie evidence of the validity of the registered mark, and of McMenamins' ownership of each registration and mark. Furthermore, the 622 Registration is conclusive evidence of the validity of the MCMENAMINS® Marks.

 16. McMenamins uses the MCMENAMINS® Marks extensively in connection with its dozens of pubs and restaurants, hotels, and concert venues, among other goods and services. Many MCMENAMINS-branded hotels are restored historic buildings, each with its own story. The consuming public is familiar with the MCMENAMINS® Marks through the popularity of McMenamins' goods and services and through McMenamins' advertising and promoting of its MCMENAMINS-branded establishments through signage, events, radio and television ads, the McMenamins website, digital ads, social media, news coverage, and MCMENAMINS-branded beverages, restaurants, and merchandise.

17. McMenamins is a hospitality, entertainment venue, and food and drinks services brand. As a result of McMenamins' extensive use of the MCMENAMINS® Marks over decades, its considerable sales, and its investment in time and marketing, the public has come to associate the MCMENAMINS® Marks with both McMenamins itself and with high-quality and unique hotels, restaurants, breweries, and other offerings in the hospitality, entertainment venue, and food and drinks services industries.

18. The quality associated with the MCMENAMINS® Marks has translated into substantial and valuable goodwill. McMenamins has a dedicated regional following as evidenced by the "McMenamins Passport," a program which invites guests to collect a stamp from every McMenamins location with valuable prizes earned at various stages of completion. Over 200,000 McMenamins Passports have been issued, demonstrating the confidence guests have in return visits to McMenamins establishments.

19. The substantial and valuable goodwill associated with the MCMENAMINS® Marks is a valuable asset for McMenamins' reputation and continued growth in its industries.

### DEFENDANT'S INFRINGEMENT AND RELATED ACTIVITY

20. Upon information and belief, TravelPass is an online travel agency ("OTA") that owns and operates the websites https://www.reservationcounter.com/ and https://www.reservationdesk.com/ (collectively the "Infringing Websites").

21. McMenamins has contractual relationships with several OTAs, but not with TravelPass. Those relationships demonstrate McMenamins' commitment to ensuring that its MCMENAMINS® Marks only appear on select websites and with authorization from McMenamins.

22. The Infringing Websites have listings for all McMenamins hotels, which necessarily display the MCMENAMINS® Marks, despite lacking authorization to list McMenamins hotels or use the MCMENAMINS® Marks.

23. Many of the unauthorized listings on the Infringing Websites have incorrect information regarding amenities and price. Guests are often not provided with the correct information until they arrive at a McMenamins hotel and/or receive their bill.

24. Other unauthorized listings on the Infringing Websites offer packages which are no longer available. Upon information and belief, in those circumstances TravelPass will reserve a similar package or room but will not alert the guest to any differences, in price or otherwise.

25. McMenamins has received multiple customer complaints as a direct result of customers attempting to book MCMENAMINS-branded services through the Infringing Websites. Because the Infringing Websites are not authorized to use the MCMENAMINS brand, they often do not provide accurate information to customers, and guests who expect one price or experience instead receive another and blame the discrepancies on McMenamins.

26. On information and belief, whenever a guest requests a McMenamins hotel room through one of the Infringing Websites, TravelPass simply books a room through one of McMenamins' partnered OTAs, such as Expedia or Hotelbeds. The room and the price requested through TravelPass's Infringing Website are sometimes different from the room and the price actually booked with McMenamins through an authorized OTA.

27. Upon information and belief, TravelPass does not make guests aware of their roundabout booking method, or the various fees, charging policies, or cancellation policies for the specific OTA used to book a guest's room.

28. McMenamins has also received customer complaints stemming from TravelPass's failure to disclose applicable OTA policies to customers. For example, if a guest wishes to extend a stay at a McMenamins hotel through an Infringing Website, TravelPass may use a different OTA to book the extended stay as a separate reservation, rather than extending the original reservation. The result for McMenamins' guests is a confusing and frustrating experience stemming from inconsistent charges, hidden fees, and difficulty in managing their reservation.

29. McMenamins has confirmed with its partnered OTAs that they do not have a contractual relationship with TravelPass or the Infringing Websites.

30. Guests who contact TravelPass in an attempt to fix issues caused by TravelPass's incorrect listings are provided inadequate customer service, which reflects poorly on McMenamins, further harming its relationships with its customers.

31. On at least one occasion, a guest contacting TravelPass thought he was speaking to McMenamins employees, evidencing actual confusion as to TravelPass's affiliation with McMenamins.

32. Because TravelPass uses McMenamins' partnered OTAs to book rooms requested by customers through its Infringing Websites, McMenamins is unaware that a guest has used an Infringing Website to book a room until it receives a customer complaint. McMenamins therefore does not learn that a customer has been promised incorrect prices or amenities until the customer does.

33. McMenamins, by correspondence dated October 7, 2022, described the damage resulting from TravelPass's incorrect, infringing listings and demanded that TravelPass cease its unauthorized use of the MCMENAMINS® Marks. TravelPass refused.

34. TravelPass is not affiliated or associated with McMenamins or sponsored by it. McMenamins has not authorized TravelPass to use the MCMENAMINS® Marks.

35. TravelPass claims to be an "affiliate of multiple suppliers that contract with McMenamins" but has refused to identify those suppliers.

36. Since at least October 2022, TravelPass has been aware of the MCMENAMINS® Marks, the MCMENAMINS® Registrations, and McMenamins' exclusive rights to use and authorize its registered MCMENAMINS® Marks. TravelPass's subsequent and continued use of the MCMENAMINS® Marks has been deliberate, willful, malicious, and in reckless disregard of McMenamins' rights. TravelPass uses the MCMENAMINS® Marks in bad faith with the intent to profit from McMenamins' goodwill in the MCMENAMINS® Marks and to cause confusion, mistake, and deception.

37. As a result of TravelPass's wrongful acts, McMenamins has suffered, and will continue to suffer, irreparable injury in the form of lost goodwill, lost revenue, and injury to its reputation. No monetary remedy alone can adequately compensate McMenamins for the harm TravelPass's wrongful acts have caused McMenamins' marks, reputation, and goodwill, and for the harm that McMenamins will suffer if TravelPass is not enjoined from its wrongful acts.

**FIRST CLAIM FOR RELIEF**
**Federal Trademark/Service Mark Infringement, 15 U.S.C. § 1114**

38. McMenamins repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

39. McMenamins owns valid and enforceable registrations for the federal MCMENAMINS® Mark, which registration has achieved incontestable status. McMenamins provides notice of its registration for the federal MCMENAMINS® Mark pursuant to 15 U.S.C. § 1111.

Page 8   -   COMPLAINT FOR TRADEMARK INFRINGEMENT

40. McMenamins has continually offered hospitality, entertainment venues, and food and beverage options using the MCMENAMINS® Marks since August 9, 1980.

41. TravelPass has infringed and continues to infringe the MCMENAMINS® service mark by, among other things, displaying the MCMENAMINS® Marks without consent and using the MCMENAMINS® Marks in commerce in connection with the sale, distribution, and advertising of TravelPass's OTA services such that the usage is likely to cause confusion, mistake, or deception as to a connection between McMenamins and TravelPass.

42. TravelPass's use of the MCMENAMINS® Marks commenced after McMenamins began using the MCMENAMINS® Marks and after the MCMENAMINS® Registrations issued.

43. TravelPass's use of the MCMENAMINS® Marks has already caused confusion or mistake in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.  It is likely that if not stopped, such confusion, mistake, and deception will continue.

44. TravelPass's use of the MCMENAMINS® Marks has also caused and is likely to cause initial interest confusion and actual confusion among guests and potential consumers of McMenamins' goods and services.

45. TravelPass will continue, unless enjoined, to cause irreparable harm to, and injury to the goodwill and reputation of, McMenamins.

46. As a direct and proximate result of TravelPass's wrongful acts, McMenamins has also suffered pecuniary damages from TravelPass's actions in an amount to be determined at trial.

47. In addition to the damages sustained, McMenamins is also entitled to recover TravelPass's profits as provided under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a).

48. McMenamins is also entitled to recover its costs and reasonable attorneys' fees associated with this action pursuant to 15 U.S.C. § 1117(a).

49. On information and belief, TravelPass's activities were taken with knowledge of McMenamins' statutory rights, and thus constitute deliberate, willful, and/or intentional infringement.  As a result, McMenamins is entitled, pursuant to 15 U.S.C. § 1117, to treble damages, together with interest thereon, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### Federal Unfair Competition and False Advertising, 15 U.S.C. § 1125(a)

50. McMenamins repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

51. McMenamins is the owner of the MCMENAMINS® Marks, and the consuming public recognizes the MCMENAMINS® Marks as being distinctive and identifiers of the unique, high-quality goods and services associated with McMenamins.

52. McMenamins' federal MCMENAMINS® Mark is the subject of registrations that have achieved incontestable status.  McMenamins provides notice of its registrations for the MCMENAMINS® Marks pursuant to 15 U.S.C. § 1111.

53. Notwithstanding McMenamins' well-known prior rights in the MCMENAMINS® Marks, TravelPass has used and continues to use the MCMENAMINS® Marks in commerce by, among other things, displaying the MCMENAMINS® Marks without consent and using the MCMENAMINS® Marks in commerce in connection with the sale, distribution, and advertising of TravelPass's OTA services such that the usage is likely to cause confusion, mistake, or deception as to a connection between McMenamins and TravelPass.

54. TravelPass's use of the MCMENAMINS® Marks in connection with its OTA services has already caused, and is likely to continue to cause, confusion, mistake, or deception as to the affiliation, sponsorship, or approval of such services.

55. TravelPass's use of the MCMENAMINS® Marks is also likely to cause at least initial interest and other confusion among consumers and potential consumers of McMenamins' goods and services.

56. Additionally, TravelPass misrepresents the nature, characteristics, and qualities of TravelPass's OTA services and commercial activities, including as described below.

57. TravelPass's Infringing Websites lead consumers to falsely believe that they can book a room at a McMenamins hotel through an Infringing Website. In reality, booking through an Infringing Website of TravelPass is merely a request to TravelPass to book a room at McMenamins. Even if TravelPass books the room for the customer, TravelPass does not always book the same room, for the same price, or under the same policies and conditions as the customer requested. By these acts, TravelPass engages in false or misleading descriptions and representations as to the nature of its services, the rooms available, the price of the rooms, and the policies and conditions that apply to the rooms.

58. TravelPass's actions constitute unfair competition and trademark/service mark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59. TravelPass will continue, unless enjoined, to cause irreparable harm to, and injury to the goodwill and reputation of, McMenamins.

60. As a direct and proximate result of TravelPass's wrongful acts, McMenamins has suffered pecuniary damages from TravelPass's actions in an amount to be determined at trial.

61. In addition to the damages sustained, McMenamins is entitled to recover TravelPass's profits as provided under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a).

62. McMenamins is entitled to recover its costs and reasonable attorneys' fees associated with this action pursuant to 15 U.S.C. § 1117(a).

63. On information and belief, TravelPass's activities were taken with knowledge of McMenamins' statutory rights, and thus constitute deliberate, willful, and/or intentional infringement. McMenamins is further entitled, pursuant to 15 U.S.C. § 1117, to treble damages, together with interest thereon, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### Common Law Trademark Infringement and Unfair Competition

64. McMenamins repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

65. McMenamins is the owner of the MCMENAMINS® Marks, and the consuming public recognizes the MCMENAMINS® Marks as being distinctive, and as an identifier of the unique and high-quality goods and services associated with McMenamins.

66. McMenamins' MCMENAMINS® Marks are inherently distinctive.

67. McMenamins' MCMENAMINS® Marks have secondary meaning.

68. Notwithstanding McMenamins' well-known prior rights in the MCMENAMINS® Marks, TravelPass has used and continues to use the MCMENAMINS® Marks in commerce by, among other things, displaying the MCMENAMINS® Marks without consent and using the MCMENAMINS® Marks in commerce in connection with the sale, distribution, and advertising of TravelPass's OTA services such that the usage is likely to cause confusion, mistake, or deception as to a connection between McMenamins and TravelPass.

69. TravelPass's use of the MCMENAMINS® Marks in connection with OTA services is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of such services.

70. TravelPass's use of the MCMENAMINS® Marks is also likely to cause initial interest and other confusion among consumers and potential consumers of McMenamins' goods and services.

71. TravelPass's actions constitute common law trademark infringement and unfair competition.

72. On information and belief, TravelPass acted with full knowledge of McMenamins' common law rights to the MCMENAMINS® Marks, thus demonstrating an intentional and/or willful intent to profit on the goodwill of the MCMENAMINS® Marks.

73. TravelPass will continue, unless enjoined, to cause irreparable harm to, and injury to the goodwill and reputation of, McMenamins.

74. As a direct and proximate result of TravelPass's wrongful acts, McMenamins has suffered pecuniary damages from TravelPass's actions in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
**Oregon Trademark Infringement**

75. McMenamins repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

76. As alleged above, McMenamins is the owner of Oregon Trademark 24,249 for the mark MCMENAMINS®.

77. TravelPass has used and continues to use MCMENAMINS® as a service mark in commerce by, among other things, displaying the MCMENAMINS® Marks without authorization and using the MCMENAMINS® Marks without consent in connection with the

Page 13 -   COMPLAINT FOR TRADEMARK INFRINGEMENT

sale and advertisement of TravelPass's OTA services such that its use is likely to cause confusion, mistake, or deception as to the origin of the services.

78.     TravelPass's conduct is likely to cause continued confusion and mistake, or to deceive the public as to the origin, affiliation, sponsorship, or connection of TravelPass's services with McMenamins, in violation of ORS 647.095.

79.     TravelPass's conduct also constitutes an attempt to profit on the goodwill that McMenamins has developed in the MCMENAMINS® Marks.

80.     In addition to the damages sustained, McMenamins is also entitled to recover TravelPass's profits as provided under ORS 647.105(1)(b).

81.     On information and belief, TravelPass's activities were taken with knowledge of McMenamins' statutory rights, and thus constitute deliberate, willful, and bad faith infringement. As a result, McMenamins is further entitled to attorneys' fees pursuant to ORS 647.105(2).

82.     McMenamins is also entitled to a judgment up to three times the sum of TravelPass's profits, McMenamins' damages, and attorneys' fees pursuant to ORS 647.105(2), in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### Oregon Unlawful Trade Practices Act – ORS 646.638

83.     McMenamins repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

84.     TravelPass, by its actions set forth above, causes a likelihood of confusion or of misunderstanding as to the source, sponsorship, or approval of its OTA services.  TravelPass has therefore engaged in an unlawful trade practice pursuant to ORS 646.608(1)(b).

85.     As a result of TravelPass's actions, McMenamins has suffered an ascertainable loss in the form of lost business revenue and tarnishment of the MCMENAMINS®

Marks. McMenamins has received multiple complaints from customers who attributed the poor customer service of TravelPass to McMenamins. On at least one occasion, a guest has resolved to never stay at a McMenamins hotel again due to a negative experience with TravelPass that he erroneously imputed to McMenamins.

86. Based on the foregoing, and pursuant to ORS 646.638, McMenamins is entitled to recover actual damages, statutory damages, punitive damages, and declaratory and injunctive relief against TravelPass, along with attorneys' fees and costs.

### SIXTH CLAIM FOR RELIEF
### Oregon Dilution

87. McMenamins repeats and incorporates by reference the allegations set forth above as though fully set forth herein.

88. As alleged above, McMenamins is the owner of Oregon Trademark 24,249 for the mark MCMENAMINS®.

89. As alleged above, McMenamins is an extremely popular Oregon-based brand offering a wide range of hospitality, entertainment venues, and food and beverage options. McMenamins' high-quality offerings have earned it widespread recognition in Oregon with a dedicated following, as evidenced by its 200,000 issued "McMenamins Passports."

90. With McMenamins' popularity also comes widespread recognition of the MCMENAMINS® Marks as designating the source of McMenamins' goods and services and what can be expected from any establishment or source bearing the MCMENAMINS® Marks.

91. McMenamins has used the Oregon MCMENAMINS® Mark continuously in Oregon for over 40 years. Currently there are 46 McMenamins locations across Oregon.

92. The Oregon MCMENAMINS® Mark meets the definition of a famous mark in Oregon.

93. Upon information and belief, TravelPass was incorporated in 2015, 35 years after McMenamins began using the MCMENAMINS® Marks. TravelPass thus began using the MCMENAMINS Marks after the MCMENAMINS® Marks became famous.

94. TravelPass's conduct amounts to dilution by tarnishment of the Oregon MCMENAMINS® Mark under ORS 647.107. TravelPass has already harmed the reputation of the Oregon MCMENAMINS® Mark and will continue to do so unless and until it is enjoined.

## PRAYER FOR RELIEF

WHEREFORE, McMenamins respectfully prays for final judgment against TravelPass as follows:

A. For a declaration that TravelPass's use of the MCMENAMINS® Marks: (1) violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; (2) violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) infringes McMenamins' rights under both the Oregon Revised Statutes and the common law; (4) constitutes unfair competition under both the Oregon Revised Statutes and the common law; and (5) dilutes the MCMENAMINS® Marks in Oregon;

B. For an order preliminarily and permanently enjoining and restraining TravelPass and its officers, agents, representatives, employees, attorneys, successors, assigns, and affiliates, and any persons in active concert or participation with any of them, from (1) infringing the MCMENAMINS® Marks; (2) using any colorable imitation or confusingly similar variation of the MCMENAMINS® Marks; or (3) otherwise engaging in unfair competition;

C. For an order that TravelPass file with the Court and serve on McMenamins within 30 days after issuance of an injunction a report in writing and under oath setting forth in detail the manner and form in which TravelPass has complied with the injunction, pursuant to 15 U.S.C. § 1116;

    D.    For McMenamins' actual and statutory damages incurred as a result of TravelPass's wrongful conduct, in an amount to be determined at trial;

    E.    For an amount equal to three times the greater of TravelPass's profits derived from, or McMenamins' damages as a result of, TravelPass's intentionally wrongful acts;

    F.    For punitive damages;

    G.    For McMenamins' costs and reasonable attorneys' fees incurred in this action;

    H.    For pre- and post-judgment interest; and

    I.    For such other and further relief as the Court may deem just and proper.

DATED: January 25, 2023.

    STOEL RIVES LLP

    *s/ Stephen H. Galloway*
    STEPHEN GALLOWAY, OSB No. 093602
    stephen.galloway@stoel.com
    Telephone: 503.294.9369
    ELLIOTT J. WILLIAMS, OSB No. 144835
    elliott.williams@stoel.com
    Telephone: 503.294.9571
    BRIAN BOLLT, OSB No. 223576
    brian.bollt@stoel.com
    Telephone: 503.294.9497

    Attorneys for Plaintiff